PHILIP C. PATTERSON – #2540
Attorney for Plaintiff
2485 Grant Avenue, Suite 100
Ogden, Utah  84401
Tel:     (801) 394-7704
Fax:    (801) 436-1083
Email:  phil@pcpatterson.com
_____

### IN THE UNITED STATES DISTRICT COURT

### DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ERNIE SILVAS,<br><br>     Plaintiff,<br><br>v.<br><br>LOOMIS ARMORED US, LLC<br><br>     Defendant. | Case No.:<br><br>**COMPLAINT**<br>**(Jury Demanded)**<br><br><br>Judge: |

The plaintiff Ernie Silvas, by and through his retained attorney, Philip C. Patteron, alleges as follows:

### JURISDICTION AND VENUE

1. The Plaintiff Ernie Silvas ("Silvas") is a resident of Weber County, Utah.

2. The Defendant Loomis Armored US, LLC. ("Loomis") is a foreign limited liability company which maintains a business office/operations facility in Salt Lake County, Utah.

3. The causes of action within this Complaint have been brought pursuant to Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §2000(et seq.) and the Civil Rights Act of 1866 as amended by the Civil Rights Restoration Act of 1991, 42 U.S.C. §1981(a) to obtain appropriate legal and/or equitable relief against the Defendant Loomis who continues to be

Silvas' employer within the meaning of each of the cited statutes. Loomis has unlawfully deprived Silvas of his rights secured and protected by federal law with respect to Silvas' race (Hispanic). Silvas' claims include damages for loss of earnings, compensatory damages, attorney fees and costs of suit.

4. The Defendant Loomis is an employer within the meaning of Title VII of the Civil Rights Act of 1964. The court's jurisdiction over the cause of action presented within this complaint is based upon 28 U.S.C. §§1331, 1337, and 1343.

## ADMINISTRATIVE PROCEDURE

6. The Plaintiff Silvas has satisfied each of the procedural and administrative requirements of U.S.C. §2000e-5 in that:

    (a)  he timely filed on November 9, 2016 a written charge of employment discrimination against the defendant Loomis with the Utah Labor Commission and its Utah Anti-Discrimination Division and with the United States Equal Employment Opportunity Commission ('EEOC");

    (b)  he received by U.S. Postal Service regular mail a dated May 9, 2018 "Notice of Right to Sue" from the Equal Employment Opportunity Commission; and

    (c)  this Complaint was filed with this court within 90 days from Silvas' receipt of the "Notice of Right to Sue".

A copy of the dated May 9, 2018 Notice of Right to Sue is attached to this Complaint as Exhibit "A".

## FACT PATTERN ALLEGATIONS

7.  Plaintiff Silvas was employed by Loomis beginning October 29, 2018 to fill an armored truck driver position. The Salt Lake City Loomis operations facility ("SLC Facility") employs 200+/- personnel.

8.  125 +/- Loomis personnel at the SLC Facility are assigned to transportation and the services provided by the operation of the Loomis armored trucks.

9.  The SLC Facility uses the following management structure in descending order of rank:

> (a) a Regional Vice President of Operations based in Phoenix, Arizona;
>
> (b) a SLC Facility based Branch Manager;
>
> (c) a SLC Facility based Operations Manager;
>
> (d) a SLC Facility based Transportation Supervisor; and,
>
> (e) 6 +/- SLC Facility based Transportation Leads.

10.  Beginning May/June 2012 and continuing to the present, Silvas has been subjected to unwelcome, severe and continuing racial slurs and vulgar racial jokes uttered by multiple Loomis line employees at the SLC Facility which have demeaned and ridiculed Silvas' Hispanic race. The language directed to Silvas has included and is not limited to: the expressions "dirty Mexicans are good only for digging ditches.", "wetback dirty Mexican", "all Mexicans should be shot as soon as they cross the border.", "dirty fucking Mexicans…breeding as fast as cockroaches,", describing Silvas' then teenaged daughter as a "street walker", that she had sexually solicited Loomis employees with photographs of herself, and that Silvas was sleeping with his daughter.

11. During late August 2013 and extending into September 2013, Silvas complained on multiple occasions to his two Transportation Leads that he wanted Loomis to intervene to end the racial slurs and vulgarity directed toward him. No action was taken by either Transportation Lead.

12. Within a September 2013 conversation between Silvas and his two Transportation Leads, a fellow transportation employee joined the conversation while uttering the expression "dirty fucking Mexican…". Neither Transportation Lead took any action against the offending employee.

13. During September 2013, Silvas met with the Branch Manager and described in detail the continuing racial harassment directed toward him by multiple Loomis line employees. The Branch Manager responded that the racial harassment directed toward Silvas was routine workplace conduct and expressed merely the way that men deal with each other in the workplace.

14. On October 3, 2013, Silvas attended a SLC Facility meeting conducted by the Regional Vice President of Operations and the Branch Manager. Silvas again presented in detail the racial harassment which continued to be directed toward him. The Regional Vice President of Operations informed Silvas that his allegations were not truthful and that if Silvas continued to complain he would be "fired."

15. In an October 3, 2013 meeting conducted by the Operations Manager and attended by Silvas and the employee then assigned with Silvas to the truck driven by Silvas, Silvas was accused of repeated timecard abuse. The meeting concluded with the discovery that timecard abuse had been committed by the other transportation employee attending the meeting and that

employee stating to the Operations Manager that "Mexicans are dumb and are only good for digging ditches." Loomis never responded to this racial statement.

16. At an October 23, 2013 meeting attended by Silvas with the Branch Manager, Silvas was informed that his driver income scheduled at $12.70 per hour would be reduced immediately to $11.35 per hour. The rationale provided to Silvas was that his $12.70 per hour scale provided him with a gross monthly employment income exceeding that earned by his two Route Leads. No other Loomis driver incurred an employment income reduction. Loomis' action made Silvas the lowest paid driver at the SLC Facility notwithstanding that he then possessed one of the longest driver employment tenures.

17. During February 2014, workplace racial slurs from multiple Loomis employees continued against Silvas including that he was "sleeping" with his teenage daughter, that she was sexually "soliciting" Loomis employees by sending photographs of herself to these employees, and that she was a "streetwalker." Multiple complaints by Silvas to the Branch Manager and to the Operations Manager produced only the responses that these statements were "merely expressions of workplace humor with no harm intended", that "everyone knows it's a big joke", that "boys will be boys", and that Silvas must no longer "bother" his two Route Leads with his racial harassment allegations.

18. On March 24, 2017 Silvas' personal bag containing his cancer prescription medications and carried by him on his assigned Loomis truck was ransacked by a fellow transportation employee amid unsubstantiated workplace rumors that Silvas was using during the workday unauthorized prescription medications or controlled substances. While Loomis management confirmed that Silvas had not been "sleeping on the job" and that his medications were medical doctor prescribed, Silvas was later informed at a May 2014 meeting that the search

of his personal bag by a fellow employee did not violate either Silvas' privacy interests or any company policy and therefore did not warrant employee discipline.

19.  Silvas was summoned to a May 2014 meeting conducted by the Regional Vice President, the Branch Manager, the Operations Manager, and a Loomis human resource employee based at the Loomis Houston, Texas corporate office. Within this meeting Silvas was transferred to a different route, was assigned a different transportation partner, and was instructed that if he continued to bring racial discrimination complaints to management his Loomis employment could be terminated.

20.  During September 2014, the Operations Manager denied Silvas' two-day vacation request for October 24-25, 2014 with the statement that Silvas' vacation request had not been written and had not been received by him. During January 4, 2015, Silvas' September 2014 written request for his two-day October 24-25, 2014 vacation was discovered in the office files of the Operations Manager. Loomis offered no apologies and took no corrective action.

21.  During October 2014, Silvas personally delivered to the Transportation Supervisor his written request for vacation time from July 1-14, 2015. This supervisor read the request and acknowledged that Silvas was the first employee to request year 2015 vacation time. On June 24, 2015, the same Operations Manager denied Silvas' request for this vacation time stating only that other management personnel had verbally informed him that Silvas had requested vacation time during July 2015 for one day only. No apologies were provided or corrective action taken by Loomis.

22.  On May 23, 2016, Silvas personally delivered to one of his two Route Leads a detailed written statement identifying the racial discrimination directed toward him from 2012 to the present. On June 13, 2016 and when questioned by Silvas, the Operations Manager informed

Silvas that he had not received the written statement delivered some 20 days earlier by Silvas to that Route Lead. Subsequent inquiries confirmed that the Route Lead had both not delivered the statement to the Operations Manager and could not locate the statement. Mr. Silvas' delivered written statement was never located. Loomis took no further action.

23. On February 14, 2017, Loomis removed Silvas from his driver position while citing his failure to weapons qualify on both January 30, 2017 and February 14, 2017. In disqualifying Silvas, Loomis failed to extend firearms qualification accommodations to Silvas which Loomis had provided to other Caucasian Loomis drivers in order for those drivers to retain their driver positions.

24. The racial animus and racial discrimination against Silvas has continued unchanged to the present.

## CAUSE OF ACTION

### Racial Discrimination
### (Disparate Treatment)

25. The plaintiff Silvas incorporates by reference each allegation of fact made within paragraphs 1 through 23 of this Complaint.

26. The racial discrimination directed toward the plaintiff Silvas because of his Hispanic race from 2012 to the present has subjected Silvas to unlawful racial discrimination and has denied Silvas equal employment opportunities.

27. The workplace racial discrimination directed toward Silvas was and continues to be intentionally and unlawfully sanctioned, promoted, encouraged, and accommodated by the Defendant Loomis.

28. The intentional and discriminatory conduct of the Defendant Loomis stated within this Complaint was willful, wanton, deliberate, malicious, egregious, outrageous, and warrants

the imposition of punitive/exemplary damages which will serve as an example and deterrent to the Defendant Loomis and others who would commit similar illegal acts.

29. Because the Defendant Loomis has engaged in discriminatory employment practices with malice and reckless indifference to the Plaintiff Silvas' federally protected rights, Silvas is entitled to punitive/exemplary damages in addition to compensatory damages and other remedies available under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et. seq. as amended and 42 U.S.C. §1981(a) as amended.

30. The described conduct of the Defendant Loomis, in violating plaintiff Silvas' rights under Title VII of the Civil Rights Act of 1964, as amended, and the Civil Rights Act of 1866, as amended, has caused injuries, damages, and harm to Silvas including but not limited to past and future economic loss, past and future non-economic losses including extreme emotional distress, loss of reputation, shame, humiliation, pain and suffering, inconvenience, mental anguish, impairment in the quality of life, and consequential losses.

## **PRAYER FOR RELIEF**

WHEREFORE, the plaintiff Ernie Silvas, requests judgment and damages against the Defendant Loomis Armored US, LLC as follows:

(a) a declaratory judgment that the Defendant Loomis has violated Mr. Silvas' rights to be free from discrimination in the workplace pursuant to Title VII of the Civil Rights Act of 1964, as amended; 42 U.S.C. §2000e, et. seq., the Civil Rights Act of 1866, as amended by the Civil Rights Restoration Act of 1991; and 42 U.S.C. §1981(a);

(b)  enter an injunction ordering the Defendant Loomis to make plaintiff whole with full back pay, benefits, and placement in a position Silvas would have obtained in the absence of discrimination;

(c)  an award to Mr. Silvas for compensatory damages in an amount to be shown at trial for past and future economic and non-economic losses, including extreme emotional distress and mental anguish, impairment of the quality of life, and consequential losses;

(d)  an award to Mr. Silvas for exemplary and/or punitive damages to be shown at trial;

(e)  an award to Mr. Silvas for reasonable attorney fees and costs, as provided by law; and,

(f)  for such other and future relief as deemed by the court to be both just and appropriate.

## DEMAND FOR JURY TRIAL

The plaintiff requests a trial by jury on all issues of fact available for jury determination.

DATED:  This 9th day of August, 2018.

/s/ Philip C. Patterson
Attorney for Plaintiff
Ernie Silvas